UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYRELL BOYD, | : | 1:21-CV-00886 |
| | : | |
| Petitioner, | : | (Magistrate Judge Schwab) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| ERIC TICE, Warden SCI-Somerset, | : | |
| | : | |
| Respondent. | : | |

## MEMORANDUM OPINION

### I. Introduction.

In 2013, the petitioner Tyrell Boyd shot and killed a man.   In this habeas corpus case, Boyd is challenging his conviction from the Court of Common Pleas of Lycoming County, Pennsylvania for murder and other crimes.   He claims that his trial counsel was ineffective for failing to object at trial to references that he was on parole at the time of the murder.   For the reasons discussed below, we will deny Boyd's petition for a writ of habeas corpus.

### II. Background and Procedural History.

#### A. Boyd's Conviction and Sentence.

A jury in the Court of Common Pleas of Lycoming County convicted Boyd of "homicide, aggravated assault, carrying a firearm without a license, person not to

possess a firearm, and flight to avoid apprehension." *Commonwealth v. Boyd*, 308

MDA 2020, 2020 WL 5016606, at *1-2 (Pa. Super. Ct. Aug. 25, 2020).   The Post

Conviction Relief Act ("PCRA") court aptly summarized the facts leading to Boyd's

arrest:

> [O]n July 20, 2013, [Boyd] shot Ansari Wilson inside a residence at 1510 Scott Street in Williamsport, Pennsylvania. In the day or hours prior to the shooting, [Boyd] and Mr. Wilson had disagreements over money, and [Boyd] told Reginald Morton that he might have to "down Mook" (shoot Mr. Wilson). Just prior to the shooting, witnesses saw [Boyd] walking towards 1510 Scott Street together with another young African American male who was riding a bike.   [Boyd] had a black handgun tucked inside the waist of his pants and he was talking on a cellular phone.   These witnesses heard [Boyd] tell the person on the other end of the conversation that he was on the block, and then [Boyd] angrily said "now what" and "I don't play" several times.   [Boyd] hung up the phone and entered the residence at 1510 Scott Street.   Shortly thereafter, the witnesses heard gunshots and [Boyd] yelling "I don't play" and/or "I told you I don't play."   [Boyd] quickly came out of the residence, took the bike from the other individual, got on the bike, and left.

> [Boyd] fled to Reginald Morton's residence where he changed his shirt before ultimately fleeing to Philadelphia.

> A witness who heard the shots called 911.   Police and emergency medical personnel responded to 1510 Scott Street. The police kicked in the door and found Mr. Wilson near the door lying on his back, covered in blood and gasping for air. Shortly thereafter, Mr. Wilson died from a gunshot wound to the torso.

> Through their investigation, the police determined that [Boyd] was involved in the shooting and that he was on state parole.   On July 22, 2013, the police contacted [Boyd]'s parole agent in Philadelphia and notified the parole agent that [Boyd] was a suspect in a Williamsport homicide.   Later that day when [Boyd] appeared in the Philadelphia parole office for a scheduled appointment, his parole agent contacted the Williamsport police who asked that [Boyd] be detained until their arrival.   Agent Raymond Kontz of the Williamsport Bureau of Police and Lycoming County Detective Steven Sorage arrested and interviewed [Boyd] at the Philadelphia parole office.

*Commonwealth v. Boyd*, CR-1467-2013, slip op. at 1–3 (Ct. Com. Pl. Lycoming Cnty. Feb. 4, 2020).

After Boyd was charged, his "counsel filed a motion for special relief, seeking to preclude any references to [Boyd] having been previously incarcerated, having been on parole or probation, or having been at the state parole office in Philadelphia when he was arrested." *Boyd*, 2020 WL 5016606, at *1.   Although the trial court ordered that the Commonwealth may not present evidence that references Boyd being previously incarcerated, it ordered that the Commonwealth "'may to the extent necessary to explain the circumstances of the alleged criminal conduct, reference [Boyd] being on supervision[,]" but it "may not present evidence as to why [Boyd] was on supervision." *Id*. at *1–2 (citation to the record omitted).

Boyd then proceeded to trial where he "testified in his own defense, admitting to shooting the victim but alleging that he did so in self-defense after the victim pulled a gun on him." *Id*. at \*2.   As mentioned at the outset, the jury convicted Boyd.   And "[o]n December 29, 2014, [Boyd] was sentenced to serve an aggregate sentence of life in prison without the possibility of parole." *Id*. (footnote omitted).

### B.   Direct Appeal.

After the trial court denied Boyd's post-sentence motion, Boyd filed a direct appeal. *Id*.   He raised several claims, none of which is relevant to the instant habeas petition.   The Pennsylvania Superior Court affirmed his judgment of sentence. *Commonwealth v. Boyd*, No. 441 MDA 2015, 2016 WL 4938003, at \*7 (Pa. Super. Ct. July 8, 2016).   And the Pennsylvania Supreme Court denied his petition for allowance of appeal. *Commonwealth v. Boyd*, 642 Pa. 3 (2016).

### C.   PCRA Proceedings.

Although Boyd initially filed a pro se PCRA petition, the PCRA court later appointed him counsel, and counsel filed amended petitions. *Boyd*, 2020 WL 5016606, at \*3.   "In his amended petitions, [Boyd] raised numerous claims of ineffective assistance of counsel." *Id*.   The PCRA court held a hearing as to three of

4

those claims, including, as relevant here, Boyd's claim that his trial counsel was ineffective by failing to object to references to him being at the parole office or being on parole. *Id*.   After the hearing, the PCRA court denied Boyd's petitions. *Id*. Boyd then appealed to the Pennsylvania Superior Court, which affirmed the PCRA court. *Id*. at *5.   And the Pennsylvania Supreme Court denied his petition for allowance of appeal. *Commonwealth v. Boyd*, 244 A.3d 1228 (Pa. 2021).

### D.   The Present Petition for a Writ of Habeas Corpus.

On May 14, 2021, Boyd, through counsel, filed the present petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.   He raises one claim.   He claims that his counsel was ineffective for failing to object to references at trial about him being on parole.   The respondent filed a response to the petition.   The parties then consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned.

### III.   Boyd is not entitled to habeas relief.

Boyd presented his claim to the state court, and the state court addressed the claim on the merits.   Thus, we review the claim under the deferential standard of 28

U.S.C. § 2254(d).[1]   We begin by setting forth the standards for addressing habeas claims on the merits.   Then, we set forth the standards for deciding ineffective-assistance-of-counsel claims.   We next set forth the Superior Court's opinion.   Then, addressing the merits of the claim, we conclude that Boyd has not shown that the Superior Court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.   Nor has Boyd shown that the decision was based on an unreasonable determination of the facts.   Thus, Boyd is not entitled to habeas relief.

### A.   The Standard for Addressing Habeas Claims on the Merits.

"The federal habeas statute, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases." *Shoop v. Hill*, 139 S. Ct. 504, 506 (2019).   In addition to overcoming procedural hurdles, a

---

[1] Boyd does not address the standard under 28 U.S.C. § 2254(d).   Rather, he merely asserts in his petition that the court erred in finding that he had not established his ineffective-assistance-of-counsel claim. *See doc. 1* ¶ 12.   But given that the state court decided that claim on the merits (Boyd does not argue otherwise), we apply § 2254(d).

state prisoner must meet exacting substantive standards to obtain habeas corpus

relief.   A federal court may not grant habeas corpus relief with respect to any

claim that was adjudicated on the merits in state court unless the state court's

adjudication

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d).

The standard under Section 2254(d) is highly deferential and difficult to meet.

*Cullen v. Pinholster,* 563 U.S. 170, 181 (2011).   It "reflects the view that habeas

corpus is a 'guard against extreme malfunctions in the state criminal justice

systems,' not a substitute for ordinary error correction through appeal." *Harrington*

*v. Richter,* 562 U.S. 86, 102–03 (2011) (quoting *Jackson v. Virginia,* 443 U.S. 307,

332 n.5 (1979) (Stevens, J., concurring)).   State courts are presumed to know and

follow the law, *Woods v. Donald,* 575 U.S. 312, 316 (2015), and § 2254(d)

"'demands that state-court decisions be given the benefit of the doubt[,]'"

*Pinholster,* 563 U.S. at 181 (quoting *Woodford v. Visciotti,* 537 U.S. 19, 24 (2002)).

7

Under § 2254(d)(1), only the holdings, not the dicta, of the Supreme Court constitute "clearly established Federal law." *Howes v. Fields,* 565 U.S. 499, 505 (2012). "Furthermore, in determining what is 'clearly established,' Supreme Court decisions cannot be viewed 'at a broad level of generality,' but instead must be viewed on a 'case-specific level.'" *Rosen v. Superintendent Mahanoy SCI*, 972 F.3d 245, 253 (3d Cir. 2020) (quoting *Fischetti v. Johnson*, 384 F.3d 140, 148 (3d Cir. 2004)). Thus, "[t]he 'clearly established Federal law' provision requires Supreme Court decisions to be viewed through a 'sharply focused lens.'" *Id*. (quoting *Fischetti*, 384 F.3d at 149).

Under the "contrary to" clause of § 2254(d)(1), "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). In other words, "a state court decision is 'contrary to' clearly established law where 'the Supreme Court has established a rule that determines the outcome of the petition.'" *Rosen*, 972 F.3d at 252 (quoting *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 888 (3d Cir. 1999) (en banc)). Thus, "'[i]t is not sufficient for the petitioner to show merely that

his interpretation of Supreme Court precedent is more plausible than the state

court's; rather, the petitioner must demonstrate that Supreme Court precedent

*requires* the contrary outcome." *Id.* (quoting *Matteo*, 171 F.3d at 888 (italics in

original)).

Under the "unreasonable application" clause of § 2254(d)(1), "a federal

habeas court may grant the writ if the state court identifies the correct governing

legal principle from [the Supreme] Court's decisions but unreasonably applies that

principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 413.   Because

federal habeas relief may be granted only if the "state court's application of clearly

established federal law was objectively unreasonable[,] an incorrect application of

federal law alone does not warrant relief." *Keller v. Larkins*, 251 F.3d 408, 418 (3d

Cir. 2001).   "The term 'unreasonable' refers not to 'ordinary error' or even to

circumstances where the petitioner offers 'a strong case for relief,' but rather to

'extreme malfunctions in the state criminal justice syste[m].'" *Mays v. Hines*, 141 S.

Ct. 1145, 1149 (2021) (quoting *Harringto*n, 562 U.S. at 102).

Under the "unreasonable application" clause of § 2254(d)(1), "if the

state-court decision was reasonable, it cannot be disturbed." *Hardy v. Cross,* 565

U.S. 65, 72 (2011).   "A state court's determination that a claim lacks merit

9

precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington,* 562 U.S. at 101 (quoting *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)).   "In other words, a federal court may intrude on a State's 'sovereign power to punish offenders' only when a decision 'was so lacking in justification . . . beyond any possibility for fairminded disagreement.'" *Mays*, 141 S. Ct. at 1149 (quoting *Harrington,* 562 U.S. at 103).

"When assessing whether a state court's application of federal law is unreasonable, 'the range of reasonable judgment can depend in part on the nature of the relevant rule' that the state court must apply." *Renico v. Lett*, 559 U.S. 766, 776 (2010) (quoting *Yarborough,* 541 U.S. at 664).   "Because AEDPA authorizes federal courts to grant relief only when state courts act *unreasonably,* it follows that '[t]he more general the rule' at issue—and thus the greater the potential for reasoned disagreement among fair-minded judges—'the more leeway [state] courts have in reaching outcomes in case-by-case determinations.'" *Id.* (emphasis in original).

Under the "unreasonable determination of the facts" provision of § 2254(d)(2), the test "is whether the petitioner has demonstrated by 'clear and convincing evidence,' § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record." *Roundtree v. Balicki,* 640 F.3d 530, 537–38

10

(3d Cir. 2011).   "[T]he evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication." *Id.* at 538.

"In considering a § 2254 petition, we review the 'last reasoned decision' of the state courts on the petitioner's claims." *Simmons v. Beard,* 590 F.3d 223, 231–32 (3d Cir. 2009) (citing *Bond v. Beard,* 539 F.3d 256, 289–90 (3d Cir. 2008)).   Thus, "[w]e review the appellate court decision, not the trial court decision, as long as the appellate court 'issued a judgment, with explanation, binding on the parties before it.'" *Burnside v. Wenerowicz*, 525 F. App'x 135, 138 (3d Cir. 2013).   But when the highest state court that considered the claim does not issue a reasoned opinion, we look through that decision to the last reasoned opinion of the state courts. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).   And we "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).   "But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." *Id.*

"AEDPA also restricts the ability of a federal habeas court to develop and consider new evidence." *Shoop v. Twyford*, 142 S. Ct. 2037, 2043 (2022).   "Review of factual determinations under § 2254(d)(2) is expressly limited to 'the evidence presented in the State court proceeding.'" *Id.*   "[R]eview under § 2254(d)(1) is [also] limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U. S. at 181.   Only in certain, narrow circumstances may a habeas petitioner present evidence that was not part of the state-court record. *Shoop*, 142 S. Ct. at 2044.   "Thus, although state prisoners may occasionally submit new evidence in federal court, 'AEDPA's statutory scheme is designed to strongly discourage them from doing so." *Id.* (quoting *Pinholster*, 563 U. S. at 186).

### B.   Ineffective Assistance of Counsel Standards.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defence." U.S. Const. amend VI.   The purpose of the right to the assistance of counsel is to ensure a fair trial, and "the Court has recognized that 'the right to counsel is the right to the effective assistance of counsel.'" *Strickland v. Washington,* 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).   "The benchmark for judging any claim of ineffectiveness must be whether counsel's

conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003). The clearly established federal law as to an ineffective-assistance-of-counsel claim is *Strickland,* which sets forth a two-prong analysis.

Under the first prong of *Strickland*, the petitioner must establish that counsel's performance was deficient. 466 U.S. at 687. "*Strickland'*s first prong sets a high bar." *Buck v. Davis*, 137 S. Ct. 759, 775 (2017). To establish that counsel's performance was deficient, the petitioner must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. As such, the court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance," *Harrington*, 562 U.S. at 104 (quoting *Strickland,* 466 U.S. at 689), and "[t]o overcome that presumption, a defendant must show that counsel failed to act 'reasonabl[y] considering all the circumstances[,]'" *Pinholster,* 563 U.S. at 189 (quoting *Strickland,* 466 U.S. at 688). "The challenger's burden is to show 'that

13

counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington,* 562 U.S. at 104 (quoting *Strickland,* 466 U.S. at 687).

Under the second prong of *Strickland*, the petitioner must establish prejudice. *Strickland,* 466 U.S. at 687.   To do so, the petitioner must show a reasonable probability that, if not for counsel's errors, the result of the proceeding would have been different. *Id.* at 694.   The petitioner "need not prove that the evidence would have been insufficient if not for counsel's errors . . . [or] 'that counsel's deficient conduct more likely than not altered the outcome.'" *Saranchak v. Sec'y, Pa. Dep't of Corr.*, 802 F.3d 579, 588 (3d Cir. 2015) (quoting *Strickland,* 466 U.S. at 693). Rather, the issue is whether there is a reasonable probability of a different result. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694.   "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Pinholster,* 563 U.S. at 189 (quoting *Harrington,* 562 U.S. at 112).

To prevail on an ineffective-assistance claim, a petitioner must satisfy both prongs of *Strickland*.   A court can choose which prong of the standard to apply first, and it may reject an ineffectiveness claim on the ground that the petitioner was not

14

prejudiced without addressing whether counsel's performance was deficient. *Strickland,* 466 U.S. at 697.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky,* 559 U.S. 356, 371 (2010).   "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one." *Premo v. Moore*, 562 U.S. 115, 122 (2011).   And "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 105.   When the state court has decided the claim on the merits, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).   "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.*

### C.   The Superior Court Opinion.

The Superior Court set forth the standard for deciding ineffective-assistance claims under the PCRA. *Boyd*, 2020 WL 5016606, at * 3.   More specifically, the Superior Court set forth the three-part standard for ineffective-assistance-of-counsel

15

claims under the PCRA as follows: "[A] petitioner must plead and prove that: (1) the legal claim underlying his ineffectiveness claim has arguable merit; (2) counsel's decision to act (or not) lacked a reasonable basis designed to effectuate the petitioner's interests; and (3) prejudice resulted. *Id.* (citing *Commonwealth v. Becker*, 192 A.3d 106, 122 (Pa. Super. Ct. 2018)).   The Superior Court then summarized Boyd's argument:

> [Boyd] argues that both of his trial counsel were ineffective when they failed to object to multiple references that were made by two Commonwealth witnesses, revealing to the jury that [Boyd] was on parole and arrested at the state parole office. More specifically, [Boyd] points to the testimony of Williamsport Bureau of Police Detectives Steven Sorage and Kevin Stiles.   Detective Sorage testified about his involvement in arresting and interviewing [Boyd] at the state parole office in Philadelphia.   Detective Stiles responded to the crime scene and obtained the victim's cell phone, identifying [Boyd] as a suspect based on the call log and subscriber information.   Detective Stiles then verified that [Boyd] was on state parole, located the state parole office in Philadelphia, and contacted [Boyd]'s parole officer to let him know that [Boyd] was a suspect in this homicide.   When [Boyd] came into the office for his scheduled appointment, the parole officer detained [Boyd] and contacted Detective Stiles, who sent Detective Sorage and another detective to interview and arrest [Boyd].

*Id*. at 3 (citations to the record omitted).

The Superior Court determined that Boyd failed to establish either the reasonable-basis prong or the prejudice prong of a claim for ineffective assistance of

16

counsel. *Id*. at * 5.   As to the reasonable-basis prong, it determined that Boyd fell

short because at the PCRA hearing his counsel testified that they did not object at

trial because the references to parole were fleeting and because "there was no basis

to object other than that which the trial court had already rejected, pretrial." *Id*.

(footnote and citation to the record omitted).   And as to the prejudice prong,

adopting the reasoning of the PCRA court, the Superior Court concluded that Boyd

was not prejudiced by his counsel's failure to object to the references to parole

because such an objection would have been futile given the court's pretrial ruling;

because the testimony that "he appeared for a scheduled appointment in the parole

office tended to negate any argument that he 'fled' to Philadelphia to avoid

apprehension or that his flight constituted consciousness of guilt"; because the

references to parole were fleeting and "[t]here were no specific or direct references

to any prior criminal activity by [Boyd]; because neither parole nor Boyd's parole

status was mentioned during closing arguments; and because "and perhaps most

significantly, there was ample evidence that [Boyd] shot the victim and was not

acting in self-defense." *Id*. at *4.

**D.   The state court's adjudication was not contrary to clearly established Federal Law, as determined by the Supreme Court of the United States.**

Although the Pennsylvania courts use slightly different language to articulate the ineffective-assistance-of-counsel standard, the standard used by the Pennsylvania courts is consistent with the *Strickland* standard.   The Third Circuit "has repeatedly recognized that Pennsylvania's test for ineffective assistance of counsel is consistent with the Supreme Court's decision in *Strickland* because it requires 'findings as to both deficient performance and actual prejudice.'" *Tyson v. Superintendent Houtzdale SCI*, 976 F.3d 382, 391 (3d Cir. 2020) (quoting *Mathias v. Superintendent Frackville SCI*, 876 F.3d 462, 476 (3d Cir. 2017)).   And the Superior Court applied that standard.   Thus, the Superior Court's decision on Boyd's claim of ineffective assistance of counsel was not contrary to clearly established federal law.   So, we turn to whether the state court's decision resulted in a decision that involved an unreasonable application of clearly established federal law, *i.e., Strickland*, or resulted in a decision that was based on an unreasonable determination of the facts.

18

**E.   The state court's decision was not an unreasonable application of clearly established federal law.   Nor was it based on an unreasonable determination of the facts.**

The state court's adjudication of Boyd's ineffective-assistance-of-counsel claim was not an unreasonable application of *Strickland*.   Nor was the state court's decision based on an unreasonable determination of the facts.

As set forth above, the Superior Court concluded that Boyd failed to establish the reasonable-basis prong of his claim of ineffective assistance of counsel, explaining that Boyd's counsel testified at the PCRA hearing that they did not lodge objections to the references of Boyd being on parole at trial for two reasons, i.e., because the references were fleeting and because there was no basis to do so that the court had not already rejected pretrial.   Under the "doubly deferential" standard that applies to a *Strickland* claim evaluated under 28 U.S.C. § 2254(d)(1), *Knowles*, 556 U.S. at 123, the Superior Court's determination in this regard was reasonable.

Similarly, the Superior Court concluded that Boyd failed to establish the prejudice prong of his claim of ineffective assistance of counsel for numerous reasons including that the refences to parole were fleeting and there was strong evidence of Boyd's guilt.   Given the fleeting nature of the comments and the strong evidence of guilt, under the deferential standard that applies to a *Strickland* claim

evaluated under 28 U.S.C. § 2254(d)(1), the Superior Court's determination that Boyd was not prejudiced was reasonable.

Further, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington,* 562 U.S. at 101 (quoting *Yarborough,* 541 U.S. at 664).   In other words, "[a]ll that matter[s] [is] whether the [Pennsylvania Superior Court], notwithstanding its substantial 'latitude to reasonably determine that a defendant has not [shown prejudice],' still managed to blunder so badly that every fairminded jurist would disagree." *Mays*, 141 S. Ct. at 1149 (quoting *Knowles*, 556 U.S. at 123).   Here, it is at least debatable whether the failure to object to the references to parole at trial could be considered reasonable trial strategy and whether those references prejudiced Boyd.

Boyd also has not argued that the Superior Court got the facts wrong.   Thus, we cannot conclude that the Superior Court's decision was based on an unreasonable determination of the facts.

## IV.   Certificate of Appealability.

For the reasons stated above, we will deny Boyd's petition for a writ of habeas corpus.   A state prisoner may not appeal the denial of a habeas petition "[u]nless a

circuit justice or judge issues a certificate of appealability[.]" 28 U.S.C.

§ 2253(c)(1)(A).   "A certificate of appealability may issue . . . only if the applicant

has made a substantial showing of the denial of a constitutional right." 28 U.S.C.

§ 2253(c)(2).   "Where a district court has rejected the constitutional claims on the

merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner

must demonstrate that reasonable jurists would find the district court's assessment of

the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484

(2000).   Because reasonable jurists would not find our assessment of the claim

debatable or wrong, we will not issue a certificate of appealability.


## V.   Conclusion.

For the foregoing reasons, we will deny Boyd's petition for a writ of habeas

corpus, and we will deny a certificate of appealability.   An appropriate order

follows.


*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge

21